Hugh HOLLAND, Plaintiff,

v.

Harriet GEIGER, Defendant.

Civ. No. 8407-M.

United States District Court
S. D. Florida,
Miami Division.

Feb. 13, 1959.

L. G. Woodard, Miami, Fla., for plaintiff.

Dwight Sullivan, Scott, McCarthy, Preston, Steel & Gilleland, Miami, Fla., for defendant.

VAUGHT, District Judge.

In this action, the plaintiff seeks to recover the sum of $25,000 which the defendant alleges was a gift.

While this controversy has the elements of a financial transaction it is basically the romantic meeting of December with May. The plaintiff, a Virginia gentleman from the historic Tidelands section of the Old Dominion and now rapidly approaching the age three score and ten, is the alleged victim. The defendant is a native of the Blue Grass State of Kentucky, that state nationally famous for fine liquor, fast horses and beautiful women, and apparently she does not in the least detract from the reputation of her native state as to the last-named distinction. While she could not be classed as a sophomore in appearance, it must be admitted that Father Time has dealt kindly with her.

One characteristic of a Virginia gentleman is the ready appreciation of a beautiful woman and this particular ability is neither dimmed nor retarded by advancing age. On the other hand, a beautiful woman does not knowingly conceal her beauty from the admiring notice of men.

This couple first met by accident in the lobby of a motor court at or near Statesboro, Georgia, in the latter part of November, 1953. The plaintiff was returning from a visit to Miami, Florida, to his home in Suffolk, Virginia. He was in company with a friend from Virginia and his friend's wife. The defendant was on her way to South Florida where she had high hopes of accumulating wealth in the real estate business. She was inspired to hopefulness by the glowing reports from this Fairyland, and incidentally hinted to her newly-found acquaintance the purposes she had in mind. The plaintiff's native gallantry asserted itself and he advised the Kentucky lady that he had a relative in the real estate business in Miami and advised her to make contact with him on her arrival in Miami. (He did not tell her, however, that everybody in Miami was in the real estate business.) He also handed her his business and professional card, on the back of which he wrote his real estate relative's name and address. He modestly let her know that he was an attorney and had extensive real estate holdings in the Tidelands.

He evidently disclosed at least a modest interest in the lady from Kentucky and made some suggestions as to her procedure in her contemplated adventure. Upon the defendant's arrival in Miami she wrote a nicely worded letter to the plaintiff expressing her appreciation for the interest he had shown her. According to the record she wrote a second letter or note relative to plaintiff's relative in Florida.

On December 15, 1953, some two or three weeks after their meeting in the Georgia motor court, the plaintiff wrote a three or four page letter to the defendant. This letter, filled with expressions of appreciation for her letters, went further and in tender terms advised her of his awakened spirit of romance and apologized for his inability to describe his feelings of "heart and mind" with "pen and ink." In this first epistle from the Tidelands, he gave his family history, referred to her "sweet letters" and detailed with brutal frankness his family life, stating that his marriage was a mistake, that the conjugal atmosphere of his home had long since been dissipated and that he and his wife had not lived as man and wife in happiness and contentment for more than twenty years and that he and his wife would never see each other again. He further stated: "My feelings toward her (his wife) will never be affected by anyone or anything." "I have paid through 41 years of sorrow for one mistake when I was 23." And in another paragraph of this first letter he said: "I think of you lots and wish I were with you now. I look forward with more pleasure than you know to seeing you. I do hope we will like each other and that we may love each other to the end." He concluded this first letter "with best wishes and lots of love."

This is not the inception of a real estate transaction nor does it even suggest

 

that their future relations will constitute real estate investments and a purported division of commissions. For nearly five years the correspondence between plaintiff and defendant continued unabated, with expressions of passionate love.

In January, 1958, he deposited a cashier's check for $25,000 in a bank at Ft. Lauderdale, Florida. On one of his annual or semi-annual visits to Florida, he took the defendant to the bank where he had made the deposit, executed in the presence of a bank official a power of attorney in favor of the defendant. After making this deposit, he wrote the defendant he had made the deposit and stated further: "Darling this is a gift to you for any purpose you may want to use it for. If you should decide not to get a house now you can keep it in that bank or transfer it to your account in your bank in Fort Lauderdale. It is all yours, darling, to do anything you want with it. And I am all yours also, darling." She proceeded to carry out his suggestions by depositing the $25,000 in her bank. She purchased a house and has expended the entire $25,000 in various ways.

Soon after she had withdrawn the money from the bank there was a change in the lovemaking and tender relationship. Whether this was due to his advancing age and the cooling of his amorous ardor, or something which had happened at Suffolk, the record is not clear. However, he sought a "renegotiation" and claimed the money was a loan, or the mere advancement of funds in a joint adventure.

It was a joint adventure, but not in real estate.

For some reason plaintiff realized that he had been foolish and indiscreet and now demands the return of his money. For five years he had showered the defendant with gifts of money and even an automobile. His highest pleasure was the responsive love which they had for each other and in his amorous ecstacy he planned to divorce his wife.

This suit is determined by plaintiff's own letters. The $25,000 was a gift, and while it must be admitted, was a generous one, yet it was his gift and he had a legal right to make it if he so desired. Sometimes penalties come high but in a case such as this they are not unusual and are not ordinarily open to public inspection. One is reminded of the well-known axiom: "Do right and fear no man; don't write and fear no woman."

Upon plaintiff's record in this case, the motion of the defendant to dismiss will be sustained. An exception is allowed.